UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TERESA A. POWELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | No. 1:13-cv-00274-TWP-MJD |
| CAROLYN W. COLVIN Acting ) | |
| Commissioner of Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

Plaintiff Teresa Powell requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"). *See* 42 U.S.C. §§ 416(i), 423(d), & 1382c(a)(3). For the reasons set forth below, the Magistrate Judge recommends **REVERSING** the decision of the Commissioner.

**I. Procedural History**

Powell filed an application for DIB and SSI on November 30, 2005, alleging an onset of disability of December 31, 2004. Powell's applications were denied initially and on reconsideration. Powell requested a hearing, which was held on April 9, 2007 before Administrative Law Judge Stephen E. Davis ("ALJ"). A supplemental hearing was held on February 25, 2008 to permit Powell's counsel to cross-examine the vocational expert. The ALJ denied Powell's applications on October 8, 2008. The Appeals Council denied Powell's request

for review on December 1, 2008. Powell then filed a complaint with this Court on January 21, 2009 under case number 1:09-cv-00065-JMS-RLY. On August 6, 2009, by agreement of the parties, the Court remanded the case back to the Appeals Council due to missing exhibits from the record. An additional hearing was held on October 21, 2010 before ALJ Davis. The ALJ issued a new decision on November 5, 2010 again denying Powell's applications. The Appeals Council again denied Powell's request for review on December 18, 2012. Powell filed the instant complaint with this Court on February 15, 2013.

## II. Factual Background[1]

Teresa Powell was 42 years old on the alleged disability onset date with past relevant experience as a hospital admitting clerk. She has had significant hearing loss since she was a child.

Powell has sought treatment from George W. Hicks, MD since 2000. In December 2003, Powell underwent hearing tests. She had an average air conduction hearing threshold of 71.6 decibels in the left ear and 70 decibels in the right ear. There were no scores listed for bone conduction hearing. Powell's speech understanding score was 85% in the right ear and 85% in the left ear which was an improvement from the tests conducted in 2000.

In February 2004, Dr. Hicks reported that Powell's hearing was essentially unchanged since the tests in December 2003. Dr. Hicks recommended that Powell should not be in a high noise area to prevent further injury to her hearing status. In March 2004, Dr. Hicks limited Powell to working in a quiet environment as it is extremely difficult for Powell to hear and understand speech and conversation in the presence of significant background noise.

---

[1] The facts are limited to Powell's physical impairments as Powell does not challenge the ALJ's findings regarding Powell's mental impairments.

Powell had a consultative examination with state agency physician Jack Summerlin, MD in February 2006. Dr. Summerlin found that Powell had severe to profound bilateral sensorineural hearing losses. He determined that Powell had good speech discrimination in the right ear, but impaired speech discrimination in the left ear. Dr. Summerlin also observed that Powell's hearing aids were worn and in poor condition and the left hearing aid was not functioning at all. Dr. Summerlin recommended new hearing aids.

State agency physician Lavonne Bastnagel prepared a Physical Residual Functional Capacity Assessment form in February 2006. Dr. Bastnagel reported a primary diagnosis of hearing loss and no secondary diagnosis. It was Dr. Bastnagel's opinion that Powell should avoid noisy workplaces and concentrated exposure to noise. This opinion was affirmed by state agency physician Dr. Sands in July 2006.

The first complaints of back pain in the record appeared in May 2007 when Powell began treatment with Danyell Loveless, MD. An MRI conducted in June 2007 showed chronic low back pain with left radiculopathy, no compression, very mild disc dehydration and minimal disc bulging. Also in June 2007, Dr. Loveless completed a Certification of Condition by Health Care Provider indicating that Powell has severe low back pain and neuropathy. Dr. Loveless indicated that the condition began in June 2007 and was expected to last until December 2007. Dr. Loveless opined that, at that time, Powell was incapacitated and was unable to work intermittently.

Dr. Loveless referred Powell to Albert Lee, MD at Indiana Neurology in June 2007. Dr. Lee's impression was that Powell suffered from left sciatica based on disc herniation. He began her on treatment for injection therapy. At the end of June 2007, Powell returned to Dr. Lee. Dr.

3

Lee reported that the injections were helping but Powell still has residual pain and pain over left knee. Dr. Lee indicated that Powell may be suffering from vasculitic neuropathy and vaculitis.

Dr. Loveless examined Powell in August 2007 in which Powell had positive straight leg tests. Powell continued to see Dr. Loveless, Dr. Lee and Dr. Hicks for treatment through 2008.

In December 2007, Dr. Hicks reported that there were no significant changes.

Powell had another MRI in August 2008. The MRI revealed very mild degenerative disc disease, but otherwise no significant changes from the MRI conducted in June 2007. Powell also was treated by Dr. Lee in August 2008 where she reported moderate back pain, but showing improvement.

The last report in the record was a functional evaluation completed by Dr. Nelligan of the Expedite Healthcare in October 2010. Dr. Nelligan indicated that Powell was unable to talk on the phone due to hearing loss.

### III.     Applicable Standard

To be eligible for SSI and DIB, a claimant must have a disability under 42 U.S.C. § 423.[2] Disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but

---

[2] In general, the legal standards applied in the determination of disability are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

any other kind of gainful employment which exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity she is not disabled, despite her medical condition and other factors. 20 C.F.R. § 404.1520(b). At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits her ability to perform basic work activities), she is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is disabled. 20 C.F.R. § 404.1520(d). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. § 404.1520(f). At step five, if the claimant can perform any other work in the national economy, she is not disabled. 20 C.F.R. § 404.1520(g).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* This court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). In order to be affirmed,

the ALJ must articulate his analysis of the evidence in his decision; while he "is not required to address every piece of evidence or testimony," he must "provide some glimpse into [his] reasoning . . . [and] build an accurate and logical bridge from the evidence to [his] conclusion." *Dixon*, 270 F.3d at 1176.

## IV.   The ALJ's Decision

Applying the five-step analysis, the ALJ found at step one that Powell had not engaged in substantial gainful activity since December 31, 2004, the alleged onset date. At step two, the ALJ found that Powell had the following severe impairments: low back pain and hearing loss in both ears with impaired speech discrimination.

At step three, the ALJ determined that Powell did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).

Next, the ALJ found that Powell had the residual functional capacity ("RFC") to perform work at the light level, but she is limited to perform work in a relatively quiet environment without significant background noise so she could hear conversational speech. The ALJ also determined that Powell could work in a noisy environment that did not require the ability to hear conversational speech as an essential part of the job.

At step four, the ALJ determined that Powell is unable to perform any past relevant work. At step five, the ALJ determined that considering Powell's age, education, work experience, and RFC, there were jobs that existed in the national economy that Powell could perform. Therefore, the ALJ determined that Powell was not disabled.

V.      **Discussion**

The central issue in this matter is whether there is substantial evidence to support the ALJ's decision that Powell was not disabled. *Dixon*, 270 F.3d at 1176. Powell raises several arguments on review: 1) substantial evidence does not support the ALJ's determination that Powell was not disabled at step three; 2) the ALJ's credibility determination is patently erroneous because it is contrary to Social Security Ruling 96-7p; and 3) substantial evidence fails to support the ALJ's determination that Powell was not disabled at step five. The Court will also address the ALJ's RFC determination.

A.      **Step Three**

Substantial evidence fails to support the ALJ's step three determination that Powell was not disabled due to her back and leg pain. The decision of medical equivalence rests with the ALJ. 20 C.F.R. 404.1526. However, in making this determination, "longstanding policy requires that the judgment of a physician . . . designated by the Commissioner on the issue of equivalence on the evidence before the [ALJ] . . . must be received into the record as expert opinion evidence and given appropriate weight." SSR 96-6p, 1996 WL 374180 (July 2, 1996). To make a determination on medical equivalency without an expert opinion is to play doctor, which the ALJ cannot do. *Brennan-Kenyon v. Barnhart*, 252 F. Supp. 2d 681, 696 (N.D. Ill. 2003) (*citing Wilder v. Chater*, 64 F.3d 335, 337-38 (7th Cir. 1995)).

While the ALJ reasonably relied on the state agency physicians' opinions with regard to medical equivalency for Powell's hearing loss, there was no medical opinion in the record on the issue of medical equivalency with regard to Powell's back and leg pain. The record indicates that, in February 2006, the state agency physicians reviewed Powell's impairments for hearing

loss only. [R. at 172-81, 210 (affirmed in July 2006).]³ However, Powell did not begin to have symptoms of back and leg pain until May 2007. No state agency physician reviewed the record since July 2006. The ALJ concluded that there was no neural involvement reported as required under Listing 1.04. [R. at 303.] Plaintiff asserts that the ALJ misinterpreted the medical evidence and ignored *neurologist* Dr. Lee's neurological findings of sciatica. Indeed, the record contains multiple diagnoses of sciatica as well as neuropathy. [See e.g. R. at 219, 236-38, 240-41, 246-47, 248-49, 252, 255.] Without a medical expert's review, the ALJ played doctor with the medical evidence. While the Court does not agree that a medical expert needed to testify, it was error for the ALJ not to obtain a medical expert opinion regarding Powell's back and leg pain. *Barnett v. Barnhart*, 381 F.3d 664, 670-71 (7th Cir. 2004). Therefore remand is warranted for further consideration of Powell's physical impairments at step three.

### B.  Credibility

Powell next argues that the ALJ erred in his credibility determination because it is contrary to SSR 96-7p. Here, Powell makes no attempt to cite to the record other than the ALJ's finding itself. The argument in its entirety is boilerplate language unsupported by record evidence typically found in counsel for the Plaintiff's briefs. Accordingly, this argument is waived. *See United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991); *Firkins v. Astrue*, No. 1:09-cv-00923-JMS-TAB, 2010 WL 3037257, *4 (S.D. Ind. Aug. 3, 2010).

### C.  RFC

Before proceeding to Powell's argument regarding step five, the Court will address the ALJ's determination of the RFC. The ALJ determined that Powell could perform work at the

---

³ The Court notes that there is no specific determination of medical equivalency with regard to Powell's hearing loss, however, three state agency physicians reviewed the record for hearing loss and, presumably, if Powell's hearing loss met or equaled a listing, it would have been noted.

8

light level which requires being able to lift and carry up to 20 pounds occasionally and 10 pounds frequently as well as sitting, standing or walking in combination for up to six hours each in an eight-hour work day. There is no medical support for this conclusion. It has never been determined how much Powell could lift or how long she could walk, sit, or stand. In fact, the only medical opinion in the record that discussed Powell's ability to work with regard to her back pain was not even acknowledged by the ALJ. In June 2007, Dr. Loveless completed a Certification of Condition by Health Care Provider indicating that Powell was incapacitated and unable to work intermittently. [R. at 219.] There is no other medical opinion in the record to contradict this opinion. While the ultimate issue of disability rests with the ALJ, the ALJ is not permitted to disregard a medical source's opinion on the issue. SSR 96-5p, 1996 WL 374183, *1 (July 2, 1996); *see also* 20 C.F.R. § 404.1527 (d); SSR 96-8p. 1996 WL 374184, *5 (July 2, 1996). The ALJ certainly is not permitted to play doctor when there is no contradicting opinion. *See Wilder*, 64 F.3d at 337.

The Court also takes issue with the ALJ's RFC determination that Powell could work in a "noisy environment that did not require the ability to hear conversational speech as an essential part of the job." [R. at 308.] There is no medical support for this determination as well. On the contrary, there are multiple opinions in the record restricting Powell from noisy environments, including from her treating physician Dr. Hicks and the state agency physicians. [R. at 150, 178, 210.] The ALJ incorrectly assumed that as long as Powell does not need to hear conversational speech that it would be acceptable for her to work in noisy environments. However, the doctors did not limit her to quiet environments for this reason. Powell was limited to quiet environments to prevent further injury to her hearing. [R. at 150.] Thus, the ALJ's RFC determination is flawed and, as such, impacts the hypothetical question proffered to the vocational expert at step five.

9

### D.     Step Five

Powell also argues that the ALJ's step five determination requires reversal because it is inconsistent with his step four determination that Powell could not perform any past relevant work. The ALJ relied on the vocational expert's testimony. The vocational expert testified that, based on the RFC, Powell could not perform any of her past relevant work because all of her past work required good hearing. As discussed above, this Court has determined that the RFC is flawed. Thus the vocational expert's opinions at step four and five are tainted and so is the ALJ's reliance on those opinions.

### VI.     Conclusion

For the reasons set forth above, substantial evidence does not support the ALJ's determination that Powell is not disabled and the Magistrate Judge recommends that the Commissioner's decision be **REVERSED**. On remand, the Court recommends that this matter be assigned to a new ALJ, that the Commissioner summon a medical expert to review whether Powell's impairments related to her hearing loss and her back/leg pain meet or medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, and that the ALJ make a new RFC determination. Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

Date: 12/10/2013

Distribution:

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Patrick Harold Mulvany
patrick@mulvanylaw.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov